

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0068-11

**PERRY MONTEZ JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## TARRANT COUNTY

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. KEASLER, J., concurred.

The question in this case is whether a variance between the allegations in the charging instrument and the proof at trial renders the evidence legally insufficient to support the conviction. Because the variance in this case involves a non-statutory allegation that does not affect the "allowable unit of prosecution," the variance cannot render the evidence legally insufficient to support a conviction. We shall affirm the judgment of the court of appeals.

## I. BACKGROUND

Appellant was indicted for various counts of aggravated assault. The count at issue in the

present case charged that appellant did then and there "intentionally or knowingly cause serious bodily injury to [the victim] by hitting her with his hand or by twisting her arm with his hand." The victim testified that appellant threw her against the wall and that hitting the wall caused her to fall to the floor and break her arm.[1]

On appeal, appellant claimed that this variance between pleading and proof rendered the evidence legally insufficient to support his conviction. The court of appeals disagreed, holding that the variance was "not material because it only concerned the method by which appellant caused the serious bodily injury."[2]

## II. ANALYSIS

The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] In *Malik v. State*, we articulated the modern Texas standard for ascertaining what the "essential elements of the crime" are; they are "the elements of the offense as defined by the hypothetically correct jury charge for the case."[4] The hypothetically correct jury charge is one that

---

[1] Before throwing her against the wall, appellant had choked the victim, thrown her on a couch, pulled her up by her arm, and choked her again. None of these actions caused the victim serious bodily injury. The victim testified that appellant used only his hands to throw her against the wall. He did not kick her or use any means other than his hands to assault her.

[2] *Johnson v. State*, No. 11-09-00037-CR, slip op. at 5 (Tex. App.–Eastland December 16, 2010) (not designated for publication).

[3] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

[4] 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011) ("To identify 'the essential elements of the crime,' we look to 'the hypothetically correct jury charge for the case.'") (quoting *Malik*).

at least "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[5] We have described the law "as authorized by the indictment" to be "the statutory elements of the offense . . . as modified by the charging instrument,"[6] but we have said also that the hypothetically correct jury charge does not necessarily have to track exactly all of the charging instrument's allegations.[7] In *Gollihar v. State*, we held that "a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances."[8]

A variance in pleading and proof can occur in two different ways. First, a variance can involve the statutory language that defines the offense. This can happen when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. For example, the retaliation statute makes it a crime to threaten a "witness" or "informant." The first type of variance occurs if the State pleads only "witness" in the charging instrument and proves only the unpled element of "informant" at trial.[9] Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way. For example, the charging instrument pleads "Mary" as the victim, but the State proves "John" at trial. Or the charging instrument pleads the offense was

---

[5] *Malik*, 953 S.W.2d at 240.

[6] *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

[7] *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001).

[8] *Id.* at 256.

[9] *See Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011).

committed with a knife, but the State proves at trial that a baseball bat was used.

With respect to the first type of variance between pleading and proof, this Court has held, both before and after *Gollihar*, that the failure to prove the statutory language pled renders the evidence legally insufficient to support the conviction.[10] We have suggested that "'immaterial variance' law as set out in *Gollihar* does not apply" to this situation,[11] or that, if considered under *Gollihar*, a variance of this sort is always material.[12]

*Gollihar* involved the second type of variance—a variance with respect to a non-statutory allegation that describes the offense in some way. The charging instrument alleged the theft of a go-cart with the model number 136202.[13] We ultimately determined that the proof of model number

---

[10] *Geick v. State*, 349 S.W.3d 542, 547-48 (Tex. Crim. App. 2011) (When pled, a statutory definition becomes an element of the offense that the State must prove. The statutory method of committing theft by deception was pled, so it must be proved); *Cada*, 334 S.W.3d at 768, 776 (When indictment pled retaliation against a "witness," it was not enough to prove the alternative, unpled statutory elements of "prospective witness" and "informant." "Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege."); *Curry v. State*, 30 S.W.3d 394, 404-05 (Tex. Crim. App. 2000) (The indictment alleged some, but not all, of the statutory alternative elements of kidnapping. A sufficiency of the evidence review was limited to the elements that had been alleged.); *Planter v. State*, 9 S.W.3d 156, 159 (Tex. Crim. App. 1999) (State pled only one of two statutory alternatives for proving murder for remuneration. Sufficiency of the evidence was measured only by the alternative that was pled.).

[11] *Cada*, 334 S.W.3d at 774.

[12] *Id.* at 767 ("We hold that a variance between the pleading of one statutory element . . . and proof of a different statutory element . . . is material under *Gollihar*."). We note, however, that some theories of law that extend criminal responsibility need not be contained in the charging instrument—e.g., the law of parties and the law of transferred intent—and may be considered in a sufficiency review. *See Malik*, 933 S.W.2d at 239-40.

[13] *Gollihar*, 46 S.W.3d at 244.

136203 rather than 136202 did not constitute a material variance.[14] Since *Gollihar*, we have decided other cases involving this second type of variance. In *Byrd v. State*, we found that a variance with respect to the name of the owner in a theft prosecution—"Mike Morales" was alleged but "Wal-Mart" was proved—was material and required an acquittal.[15] But in *Fuller v. State*, we found that a variance with respect to the name of the victim in a prosecution for injury to an elderly individual—"Olen M. Fuller" was alleged but "Buddy Fuller" was proved—was *not* material.[16]

So, in contrast to our treatment of statutory allegations, for non-statutory allegations we tolerate some variation in pleading and proof. We tolerate "little mistakes" that do not prejudice the defendant's substantial rights but we will not tolerate a variance that really amounts to a failure to prove the offense alleged.[17] What is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument.[18] For example, in a murder prosecution, the victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial.[19] If the State has alleged the murder of "Dangerous Dan" but has proved, instead, the murder of "Little Nell," then

---

[14] *Id.* at 258.

[15] 336 S.W.3d 242, 244, 255-58 (Tex. Crim. App. 2011).

[16] 73 S.W.3d 250, 251, 254 (Tex. Crim. App. 2002).

[17] *Byrd*, 336 S.W.3d at 246-48.

[18] *Id*. at 246-47.

[19] *Id.* at 246-47, 247 n.21, 252-53.

the State has proved a different murder than it has alleged, and an acquittal is required.[20]

The key to this conclusion is that each victim is an allowable unit of prosecution for the offense of murder.[21] If there are multiple murder victims, the State may obtain multiple murder convictions.[22] So, the murder of one individual is a different offense from the murder of a different individual. But some types of facts—such as the method by which a murder is committed—do not relate at all to the allowable unit of prosecution. The State could allege "poisoning, garroting, shooting, stabbing, or drowning," of a single individual, and those different acts would simply be alternate methods of committing a single offense.[23] With only one victim, there can be only one murder, regardless of how that murder is committed.[24]

We are frequently called upon to determine the "allowable unit of prosecution" in cases involving intertwining strands of our double-jeopardy and jury-unanimity jurisprudence.[25] In making such a determination, we generally try to ascertain the focus or gravamen of the offense.[26] Most of those cases involve determining whether alternative statutory elements mark separate offenses or

---

[20] *Id.* at 246-47.

[21] *See Ex parte Rathmell*, 717 S.W.2d 33, 35-36 (Tex. Crim. App. 1986) (death of each victim is a separate allowable unit of prosecution for the offense of manslaughter); *Saenz v. State*, 166 S.W.3d 270, 272 (Tex. Crim. App. 2005) (explaining that each individual victim is the allowable unit of prosecution for most violent offenses and citing *Rathmell*).

[22] *See* previous footnote.

[23] *Ngo v. State*, 175 S.W.3d 738, 746 n.27 (Tex. Crim. App. 2005).

[24] *See Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) ("Thus, the death of one victim may result in only one murder conviction, regardless of how the actor accomplished the result.").

[25] *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008).

[26] *Id.* at 907.

simply represent alternative means of committing the same offense. For example, alternative statutory methods of committing a homicide are considered the same offense when the same victim is involved, but alternative statutory methods of committing sexual assault are considered different offenses.[27] But this type of inquiry can be made even when non-statutory allegations are at issue. The Supreme Court has explained that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, [for instance], which of several possible means the defendant used to commit an element of the crime."[28] In an injury-to-a-child case, we held that a jury did not necessarily have to agree on what underlying acts caused the child's injuries.[29] And we have held that two burglary convictions, based upon two victims, violated double jeopardy when there was only a single entry.[30]

The jury unanimity context may provide a useful framework for evaluating non-statutory variances because any issue involving a non-statutory variance can be converted into a jury unanimity question. If the non-statutory allegations that were pled and proved had both been pled, could both have been submitted in the jury charge in support of a single offense without violating principles of jury unanimity? For example, an indictment might allege that Dangerous Dan was murdered by being stabbed with a knife, but the proof at trial might showed that he was, instead, bludgeoned with a baseball bat. The issue could be re-framed as whether the principles of jury

---

[27] *See id.* at 905-06.

[28] *United States v. Richardson*, 526 U.S. 813, 817 (1999).

[29] *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007).

[30] *Ex parte Cavazos*, 203 S.W.3d 333, 335, 337 (Tex. Crim. App. 2006) (two victims, but only one offense because there was only a single entry, and the allowable unit of prosecution for burglary is each entry, not each victim).

unanimity would be violated if "stabbed with a knife" and "bludgeoned with a baseball bat" were both submitted in support of the single murder offense to the jury. The answer is no, because the two methods of committing murder do not result in two offenses.[31]

Beginning at least with *Gollihar*, the cases in which we have made an inquiry into the materiality of a variance have been cases in which a non-statutory allegation was descriptive of an element of the offense that defines or helps define the allowable unit of prosecution. *Gollihar* and *Byrd* involved theft prosecutions. Theft has two gravamina: the property and ownership.[32] These elements alone do not always define the allowable unit of prosecution for theft (property can be jointly owned), but the allowable unit of prosecution can at least be derived from the combination of these elements: different property taken from different persons are different thefts.[33] The description of the item taken in *Gollihar*—a go-cart with a certain model number—constituted a non-statutory description of the gravamen element of property. The question we faced in *Gollihar* was whether the variance was significant enough that we could not conclude that the State had proved the same theft—the stealing of the same go-cart—as the one it had alleged. In *Byrd*, the variance involved the name of the owner. The specific name of the owner is not an element of the

---

[31] The jury-unanimity context cannot be used for statutory variances because the State must always prove its statutory allegations. *See* above.

[32] *Byrd*, 336 S.W.3d at 250-51, 250 n.40. Although we referred to "appropriation of property" as part of the gravamen, it is clear that both we and the State (with whom we agreed in part) were referring to the identity of the property that was appropriated, not the method by which the property was appropriated. *See id.* at 250-51 (referring to "certain specified property"), 250 n.40 (State contended "that it is the property taken . . . that identifies the allowable unit of prosecution in a theft case").

[33] *See id.* at 251 n.43. Of course multiple thefts could be committed against the same person, e.g. different property stolen on different days.

offense of theft,[34] but it is a non-statutory description of the statutory, gravamen element of ownership.[35] The question was whether the variance in the name was significant enough that we could not conclude that the State had proved the same theft when it alleged that property was taken from Mike Morales but proved, instead, that property was taken from Wal-Mart. *Fuller* addressed the variance of a victim's name in an "injury to an elderly individual" prosecution.[36] Because the offense at issue in that case is an assaultive offense,[37] the victim is one of the statutory, gravamen elements of the offense.[38] The question was whether proof of the nickname instead of the full name created a variance so significant that it left us unable to tell whether the victim proven was the same person as the victim alleged.[39]

But as we explained above, a variance could involve a non-statutory allegation that has nothing to do with the allowable unit of prosecution and, therefore, cannot be a basis for saying that the proved offense is different from the one that was pled. "Stabbing with a knife" and "bludgeoning

---

[34] *Id.* at 251.

[35] *See id.* at 252 ("Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same *person* (or entity)—regardless of name—as shown by the evidence.").

[36] 73 S.W.3d at 251.

[37] *See Cook v. State*, 884 S.W.2d 485, 489 (Tex. Crim. App. 1994) (quoting *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (characterizing "injury to a child" statute, which exists in the same Penal Code section as the "injury to an elderly individual offense," as an "assaultive," result-of-conduct offense)).

[38] *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999) ("the allowable unit of prosecution for an assaultive offense is each victim").

[39] *See Fuller*, 73 S.W.3d at 258 (Womack, J., concurring).

with a baseball bat" are two possible ways of murdering Dangerous Dan, but they do not constitute separate offenses. These methods of committing murder do describe an element of the offense: the element of causation.[40] But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed.[41] Variances such as this can never be material because such a variance can never show an "entirely different offense" than what was alleged.

In the present case, appellant was charged with aggravated assault by causing serious bodily injury. The variance in this case involves the charged acts of "hitting the victim with his hand" and "twisting the victim's arm with his hand" versus the proved act of "throwing the victim against the wall." All of these acts describe the causation element of the offense, but none of them are used to describe the injury suffered by the victim. What caused the victim's injury is not the focus or gravamen of this offense. The aggravated assault offense at issue is a result-of-conduct crime with the focus or gravamen being the victim[42] and the bodily injury that was inflicted.[43] "The precise act or nature of conduct in this result-oriented offense is inconsequential."[44] Had the State pled and proved different injuries, a question might arise as to whether the difference between what was pled and what was proved was significant enough to be material. Separate crimes of aggravated assault

---

[40] *See* TEX. PENAL CODE § 19.02(b)(1)-(3)("causes the death of an individual").

[41] *See Young*, 341 S.W.3d at 423.

[42] *Hawkins*, 6 S.W.3d at 560.

[43] *Landrian v. State*, 268 S.W.3d 532, 533, 537 (Tex. Crim. App. 2008).

[44] *Id.* at 537.

could be based upon separately inflicted instances of bodily injury.[45] But the act that caused injury does not define or help define the allowable unit of prosecution for this type of aggravated-assault offense, so the variance at issue cannot be material.

To summarize, variances can be classified into three categories, depending upon the type of allegation that the State has pled in its charging instrument but failed to prove at trial.[46] First, a variance involving statutory language that defines the offense always renders the evidence legally insufficient to support the conviction (i.e. such variances are always material). Second, a variance involving a non-statutory allegation that describes an "allowable unit of prosecution" element of the offense may or may not render the evidence legally insufficient, depending upon whether the variance is material (i.e. such variances are sometimes material). Finally, other types of variances involving immaterial non-statutory allegations do not render the evidence legally insufficient.[47] The variance in the present case falls within the third category.

We affirm the judgment of the court of appeals.

Delivered: March 21, 2012
Publish

---

[45] At this juncture, we need not address whether "bodily injury" under the aggravated-assault statute consists of each discrete harm suffered by the victim or consists of all damage suffered by the victim in a single transaction. However bodily injury is defined, a separate bodily injury would be a separate offense.

[46] *See also Fuller*, 73 S.W.3d at 255-57 (Keller, P.J., concurring) (discussing three types of variances).

[47] We do not address whether a variance under this third category could be significant enough to warrant a new trial based upon lack of notice.